**[J-58A-2013, J-58B-2013 and J-58C-2013] [MO: McCaffery, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| NEWTOWN SQUARE EAST, L.P., | : No. 14 MAP 2013 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court dated December 29, |
| | : 2011 at No. 1474 CD 2010 which Affirmed |
| v. | : the Order of the Delaware County Court of |
| | : Common Pleas, Civil Division, dated June |
| | : 24, 2010 at No. 09-14594. |
| TOWNSHIP OF NEWTOWN, | : |
| | : ARGUED: September 10, 2013 |
| Appellee | : |
| | : |
| BPG REAL ESTATE | : |
| INVESTORS-STRAW PARTY-1, L.P., | : |
| BPG REAL ESTATE | : |
| INVESTORS-STRAW PARTY-II, L.P., | : |
| CAMPUS INVESTORS OFFICE B, L.P., | : |
| CAMPUS INVESTORS 25, L.P., CAMPUS | : |
| INVESTORS 1 BUILDING, L.P., CAMPUS | : |
| INVESTORS H BUILDING, L.P., CAMPUS | : |
| INVESTORS D BUILDING, L.P., CAMPUS | : |
| INVESTORS COTTAGES, L.P., CAMPUS | : |
| INVESTORS OFFICE 2B, L.P., ELLIS | : |
| PRESERVE OWNERS ASSOC. INC., | : |
| KELLY PRESERVE OWNERS ASSOC. | : |
| INC., COTTAGES AT ELLIS OWNERS | : |
| ASSOC. INC., GENBER/MANAGEMENT | : |
| CAMPUS LLC, BERWIND PROPERTY | : |
| GROUP LTD., EXECUTIVE BENEFIT | : |
| PARTNERSHIP CAMPUS L.P., | : |
| MANAGEMENT | : |
| PARTNERSHIP-BENEFIT AND ELLIS | : |
| ACQUISITION L.P., | : |
| | : |
| Intervenors | : |
| | : |
| | |
| NEWTOWN SQUARE EAST, L.P., C/O | : No. 15 MAP 2013 |
| NATIONAL REALTY CORPORATION, | : |
| | : Appeal from the Order of the |

|                                                      |                                                  |
|------------------------------------------------------|--------------------------------------------------|
| Appellant                                            | : Commonwealth Court dated December 29,          |
|                                                      | : 2011 at No. 2390 CD 2010                       |
|                                                      | : Affirming/Reversing the Order of the           |
| v.                                                   | : Delaware County Court of Common Pleas,         |
|                                                      | : Civil Division, dated October 28, 2010 at      |
|                                                      | : No. 10-4799.                                   |

ZONING HEARING BOARD OF
NEWTOWN TOWNSHIP, DELAWARE       : ARGUED:   September 10, 2013
COUNTY, PENNSYLVANIA,
:
:
Appellee                                  :
:
NEWTOWN TOWNSHIP,                         :
:
Intervenor                                :
:
BPG REAL ESTATE                           :
INVESTORS-STRAW PARTY-1, L.P.,            :
BPG REAL ESTATE                           :
INVESTORS-STRAW PARTY-II, L.P.,           :
CAMPUS INVESTORS OFFICE B, L.P.,          :
CAMPUS INVESTORS 25, L.P., CAMPUS         :
INVESTORS 1 BUILDING, L.P., CAMPUS        :
INVESTORS H BUILDING, L.P., CAMPUS        :
INVESTORS D BUILDING, L.P., CAMPUS        :
INVESTORS COTTAGES, L.P., CAMPUS          :
INVESTORS OFFICE 2B, L.P., ELLIS          :
PRESERVE OWNERS ASSOC. INC.,              :
KELLY PRESERVE OWNERS ASSOC.              :
INC., COTTAGES AT ELLIS OWNERS            :
ASSOC. INC., GENBER/MANAGEMENT            :
CAMPUS LLC, BERWIND PROPERTY              :
GROUP LTD., EXECUTIVE BENEFIT             :
PARTNERSHIP CAMPUS L.P.,                  :
MANAGEMENT                                :
PARTNERSHIP-BENEFIT AND ELLIS             :
ACQUISITION L.P.,                         :
:
Intervenors                               :
:

|                                                      |                                                  |
|------------------------------------------------------|--------------------------------------------------|
| NEWTOWN SQUARE EAST, L.P., C/O                        | : No. 16 MAP 2013                                |
| NATIONAL REALTY CORPORATION,                         | :                                                |
|                                                      | : Appeal from the Order of the                   |
| Appellant                                            | : Commonwealth Court dated December 29,          |

|   | : 2011 at No. 137 CD 2011 |
|---|---|
|   | : Affirming/Reversing the Order of the |
| v. | : Delaware County Court of Common Pleas, |
|   | : Civil Division, dated January 25, 2011 at |
|   | : No. 10-4799. |
| ZONING HEARING BOARD OF | : |
| NEWTOWN TOWNSHIP, DELAWARE | : ARGUED: September 10, 2013 |
| COUNTY, PENNSYLVANIA, | : |
|   | : |
| Appellee | : |
|   | : |
| NEWTOWN TOWNSHIP, | : |
|   | : |
| Intervenor | : |
|   | : |
| BPG REAL ESTATE | : |
| INVESTORS-STRAW PARTY-1, L.P., | : |
| BPG REAL ESTATE | : |
| INVESTORS-STRAW PARTY-II, L.P., | : |
| CAMPUS INVESTORS OFFICE B, L.P., | : |
| CAMPUS INVESTORS 25, L.P., CAMPUS | : |
| INVESTORS 1 BUILDING, L.P., CAMPUS | : |
| INVESTORS H BUILDING, L.P., CAMPUS | : |
| INVESTORS D BUILDING, L.P., CAMPUS | : |
| INVESTORS COTTAGES, L.P., CAMPUS | : |
| INVESTORS OFFICE 2B, L.P., ELLIS | : |
| PRESERVE OWNERS ASSOC. INC., | : |
| KELLY PRESERVE OWNERS ASSOC. | : |
| INC., COTTAGES AT ELLIS OWNERS | : |
| ASSOC. INC., GENBER/MANAGEMENT | : |
| CAMPUS LLC, BERWIND PROPERTY | : |
| GROUP LTD., EXECUTIVE BENEFIT | : |
| PARTNERSHIP CAMPUS L.P., | : |
| MANAGEMENT | : |
| PARTNERSHIP-BENEFIT AND ELLIS | : |
| ACQUISITION L.P., | : |
|   | : |
| Intervenors | : |
|   | : |

## DISSENTING OPINION

**MR. JUSTICE EAKIN**         **DECIDED: September 24, 2014**

I agree with the majority that the Planned Residential Development (PRD) Ordinance does not offend the provisions in Article VII of the Municipalities Planning Code (MPC).[1]   However, I would reverse, as I find BPG Real Estate Investors' (BPG) tentative plan was insufficiently specific and contained improper use designations, thereby precluding informed public comment and appropriate governmental consideration; as such, it did not comply with the ordinance.   Thus, I respectfully dissent.

As the majority notes, PRDs are not based on traditional notions of zoning.   They allow different uses to be adjacent to one another, forming little multi-use complexes and communities rather than restricting larger areas to single uses.   Obviously, flexibility is required to accomplish this, but flexibility of the whole does not excuse the developer from identifying what those different uses are and where they are to be placed.   That is, allowing multiple uses on a single development plan is not only permitted but is the underlying reason for the PRD legislation — however, public comment and governmental consideration are required by that legislation, and cannot happen in any meaningful way when the plan merely describes broad generic categories not in conformity with the enumerated permissible uses of the ordinance or the MPC.

The MPC mandates an ordinance "set forth the uses permitted in a [PRD.]"   Id., § 10705(b).   This ordinance set forth 21 specific uses.   See PRD Ordinance, Article III, § 302(A).   Per § 707(4) of the MPC, a tentative plan must include "the density of land use to be allocated to parts of the site to be developed; [] the location and size of the common open space …; [and] the use and the approximate height, bulk and location of buildings and other structures[.]"   53 P.S. § 10707(4)(ii)-(iv).   Similar to § 707(4), Article IV of the PRD Ordinance requires a tentative plan to include "[a] designation and location of the intended uses of all portions of the proposed development … [and] the density of land use

_____

[1] 53 P.S. §§ 10701-10713.

to be allocated to parts of the site to be developed." See PRD Ordinance, Article IV, § 402.4(H)(1), (4).

If a tentative plan identifies "the use and the approximate height, bulk and location" of a segment as a restaurant, it need not name the restaurant to comply with 53 P.S. § 10707(4)(iv). However, merely calling it "commercial" space or "non-residential" space does nothing to identify the use thereof, and does not allow the public to make any meaningful comment; it does not allow the governing body to understand what it is really approving. The differences between restaurants of identifiable height, bulk, and location may be inconsequential, but there are considerable differences between all the uses that qualify as "non-residential" — a restaurant is one thing, but a Walmart is quite another. A hotel is "commercial," but brings with it a different dynamic than a barber shop. There is a measured degree of specificity that must be provided if the review requirements of the MPC and the ordinance are to have meaning. These are uses "as of right," but that does not mean they may be located in a slap-dash fashion and be immune from identity such as allows comment or considered approval.

The Board reviewed BPG's proposal for development of Sector 1 of the PRD tract, approving, "with the maximum density and intensity of use[,]" 464,560 square feet of "[c]ommercial/retail/restaurant" space and "[u]p to an additional 100,000 square feet of flexible space that may be devoted to office and/or hotel use." Board of Supervisors Decision, 12/3/09, at 11. Although the land subject to a PRD plan may indisputably contain mixed uses, there is no authority allowing the use designations themselves within the plan to be comingled. Neither Article VII of the MPC nor the PRD Ordinance provide for multi-use designations in tentative plans.[2] See 53 P.S. § 10707(4); see also PRD

---

[2] Although a mixed-use building is allowed under the PRD Ordinance and Article VII of the MPC, BPG's multi-use designations pertained to the entire sector itself; it did not (continued…)

Ordinance, Article III, § 302(A); id., Article IV, § 402.4. Such combined designations also lack the requisite submission information for a tentative plan, the purpose of which is to provide such information that is reasonably necessary to disclose the tentative use to the governing body. See 53 P.S. § 10707(4); see also PRD Ordinance, Article IV, § 402.4 ("The intent of the [t]entative [p]lan submission requirements is to provide the … planning information specifically required by Section 707(4) of [the MPC.]").

Flexibility does not equate to "obfuscation by generality." These ambiguous designations serve as little more than conjecture and contain inadequate information — the tentative uses are practically undefined, and the possibilities encompassed thereby are nearly endless. For example, "commercial/retail/restaurant" could entail solely retail, solely commercial, or solely restaurant space, or any ratio of the three. It could be retail (Macy's or K-Mart), restaurant (Sheetz or Le Bec Fin), offices (doctors or bail bondsmen), or commercial (a bowling alley or Whole Foods). It could be any mix of these. It is not obscuring the peculiar tenant within "uses as of right" that is objectionable; it is the befogging of the ability to identify the actual use that is created by the vague generality of the plan's descriptions.

"Commercial," which is not a use enumerated in the PRD Ordinance, does not constitute an identifying term for it can encompass approximately 13 other uses apart from retail or restaurant use. See PRD Ordinance, Article III, § 302(A). The multi-use designation of "commercial/retail/restaurant" could include a tract of either 464,560 square feet of fast food, retail, business offices, anything else considered "commercial," or any combination thereof. Nearly half a million square feet is a lot of space to be undefined. Further, "[u]p to an additional 100,000 square feet of flexible space that may

_____

(…continued)
submit a designation for each particular mixed-use building apportioning each use to its corresponding square footage.

be devoted to office and/or hotel use[,]" Board of Supervisors Decision, 12/3/09, at 11, is even more vague. Not only could it allow solely hotel or office space, or any combination of the two, but it also could encompass "flexible space," which "may" be used for hotel or offices — not "shall" be so used, but "may" be. This designation — maybe it will be, maybe it won't — allows 100,000 square feet of malleable space for whatever use BPG pleases.

The aforementioned designations should have been separated into single uses containing the tentative square footage allocated to each particular use. This would have sufficiently complied with the submission requirements under § 707(4) of the MPC and Article IV of the PRD Ordinance by providing "such information in the [tentative-plan] application as is reasonably necessary to disclose to the governing body … the density of land use to be allocated to parts of the site to be developed … [and] the use and the approximate height, bulk and location of buildings and other structures[.]" 53 P.S. § 10707(4)(ii), (iv).

The General Assembly did not intend to allow such blurred designations of use; if it did, it would have explicitly permitted such combination. Instead, the General Assembly specifically utilized the singular term "use." See, e.g., id., § 10707(4)(iv). Moreover, the General Assembly's clear intent is evident upon review of the final-plan procedure under the MPC and the PRD Ordinance. When examining the subsections controlling an application for final approval, it appears the governing body has the duty to grant final approval as long as the plan conforms to the ordinance and does not contain "variations" from the approved tentative plan:

> (b) In the event the application for final approval has been filed, together with all drawings, specifications and other documents in support thereof, and as required by the ordinance and the official written communication of tentative approval, the municipality shall … grant such development plan final approval ….

(c) In the event the [final] plan as submitted contains <u>variations</u> from the [] plan given tentative approval, the approving body may refuse to grant final approval ….

<u>Id.</u>, § 10711(b)-(c) (emphasis added); <u>see also</u> PRD Ordinance, Article IV, §§ 408.2-408.3.

After reviewing these provisions, the danger of allowing multi-use designations becomes apparent; approving their use eviscerates final-plan review and essentially gives the developer unfettered discretion. A tentative approval of "commercial/retail/restaurant" affords a developer unreviewable options in creating final plans, yet the plan would have to be approved because it would be in compliance with the tentatively approved plan, as the term is so broad that any variations or change could fit under its umbrella. Permitting broad multi-use designations promotes vagueness in the tentative-plan stage and results in less recognition of the final product, less vetting upon final review, and uncertain information being disclosed to affected parties and the governing body regarding what the developer actually proposes. Such wide-ranging designations appear contrary to the plain meaning of the PRD Ordinance and Article VII of the MPC regarding the purpose of final review and the requirement that tentative plans include all reasonably necessary information about the proposed PRD.

For these reasons, I respectfully dissent.

Mr. Justice Saylor and Madame Justice Todd join this dissenting opinion.